## NORTHWESTERN MUT. LIFE INS. CO. v. WEST.

### No. 5843.

Court of Appeals of the District of Columbia.
Argued Oct. 10, 1933.
Decided Dec. 11, 1933.

Paul F. Myers, of Washington, D. C., for appellant.

Leon Tobriner, B. U. Graham, and Walter N. Tobriner, all of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

MARTIN, Chief Justice.

An appeal from a judgment of the Supreme Court of the District of Columbia entered upon a verdict for the appellee, in an action to recover upon a life insurance policy issued by the appellant.

In the lower court this case was consolidated and tried jointly with Northwestern Mutual Life Insurance Company v. Eugene C. Gott, now on appeal to this court as No. 5842. 62 App. D. C. —, 68 F.(2d) 426. The cases relate to two separate life insurance policies issued by the appellant company upon the life of Sidney West, and various questions involved therein are common to both cases. Accordingly, the opinion of this court in case No. 5842, which is handed down herewith, should be read in connection with the present opinion.

In the instant case it appears without dispute that on January 31, 1927, the appellant, the Northwestern Mutual Life Insurance Company, a corporation, hereinafter called the company, issued a policy of insurance upon the life of Sidney West, a resident of the District of Columbia, in the sum of $20,000, payable upon his decease to his wife, Florence H. West, the appellee herein; and that on August 9, 1927, the insured departed this life, and the beneficiary filed proof of his death and claimed payment under the policy.

The company refused to make such payment on the ground that the insured had made certain representations relating to his physical history and condition of health in his application for the insurance, which, as alleged by the company were untrue, and were known to him to be untrue when made; that these representations were material to the risk; and that the company relied upon them, and was thereby induced to issue the insurance policy in question.

The several questions and answers thus referred to read as follows:

"Q. Give below all illnesses, diseases, or accidents you have had during the past five years with names of the physicians or attendants. If none, so state. A. None.

"Q. Do you contemplate, for any reason, either a temporary or permanent change of residence or a trip beyond the limits of the mainland of the U.S.A.? If so, when, where, and for what purpose? A. None, except pleasure trip to Europe in about 6 weeks.

"Q. Are you in good health? If not, give particulars. A. Yes.

"Q. When were you last confined to the house by illness? For what? Duration and nature? A. 1918. Hemorrhoids. Good recovery.

"Q. Have you had since childhood any of the following diseases or symptoms? Give below full particulars, including number of

attacks, date, duration, and result of each.—Dizzy spells, unconsciousness, fits, epilepsy, apoplexy, paralysis, mental derangement, and/or disease of the brain or nervous system. A. No.

"Q. Have you had since childhood any of the following diseases or symptoms? Give below full particulars, including number of attacks, date, duration, and result of each.—High blood pressure, disease of heart or blood vessels, enlarged veins, anemia, or other disease of the blood. A. No."

It is alleged by the company that the foregoing statements made by the insured were untrue in this, that the insured had suffered at divers times preceding the making of the application from heart disease, disease of the nervous system, and other serious ailments, as was then and there known to him.

It is admitted by the appellee that the insured made the statements set out above, but it is denied that they were untrue and that the insured knew them to be untrue when made.

Issue was joined in the case, trial was had to the jury upon testimony, and the jury returned a verdict for the plaintiff. Motion for a new trial was filed by the company, which was overruled, and judgment was entered for the plaintiff. The present appeal was then taken.

In its first assignment of error the company claims that the lower court erred in refusing to grant its prayer for a directed verdict. This calls for a brief reference to the evidence in the case.

■ It must first be noted that the policy contains a general provision reading as follows: "All statements made by the insured in applying for this policy shall, in the absence of fraud, be deemed representations and not warranties. * * *" Therefore the company, in order to sustain its defense in the present case, must prove, not only that the statements in question were untrue, but also that the insured knew them to be untrue when made, and that he uttered them falsely and fraudulently. Bankers' Reserve Life Co. v. Matthews (C. C. A.) 39 F.(2d) 528, 536; Joyce on Insurance (2d Ed.) 1884; Penn Mut. Life Ins. Co. v. Mechanics' Savings Bank & Trust Co. (C. C. A.) 72 F. 413, 38 L. R. A. 33; N. Y. Life Ins. Co. v. Clark, 110 Okl. 31, 235 P. 1081; Cooley's Briefs on Insurance, 4th Vol. (2d Ed.) p. 3050. The question of the truth or falsity of the representations made by the insured is for the jury. Dubcich v. Grand Lodge A. O. U. W., 33 Wash. 651, 74 P. 832. And the burden of proof upon such an issue rests upon the insurer. Chambers v. N. W. Mut. Life Ins. Co., 64 Minn. 495, 67 N. W. 367, 58 Am. St. Rep. 549. If the evidence upon such an issue is conflicting, a verdict for the defendant should not be directed. Moulor v. Am. Life Ins. Co., 101 U. S. 708, 25 L. Ed. 1077. And it has been held that the defense of misrepresentation or fraud in such cases must be established by a preponderance of clear and satisfactory evidence; not only by a preponderance of evidence, but by a preponderance of evidence that is clear and satisfactory. College Silk Throwing Co. v. American Credit Indemnity Co. (C. C. A.) 43 F.(2d) 668; Suravitz v. Prudential Ins. Co. of America, 261 Pa. 390, 104 A. 754; N. Y. Life Insurance Co. v. Kwetkauskas (C. C. A.) 63 F.(2d) 890; N. W. Mut. Life Ins. Co. v. Wiggins (C. C. A.) 15 F.(2d) 646; Security Life Ins. Co. of America v. Brimmer (C. C. A.) 36 F. (2d) 176; Equitable Life Assur. Soc. v. Dunn (C. C. A.) 61 F.(2d) 450.

■ The testimony in the case is conflicting. It tends, however, to show that West in the year 1925 was in a nervous and run-down condition. He had for years been overburdened by business cares and labors, and besides had suffered from domestic unhappiness. He knew at that time that he was not in the best condition of health, but the testimony does not show that he regarded himself as suffering from actual illness or disease. He consulted his family doctor, however, who reported that West was suffering from nervous depression, but that there were no physical symptoms or defects which accounted for it; and, upon interrogating West, the doctor became convinced that it was his unhappy marital relations which caused his trouble; at one time the doctor found West prostrated because of a furious quarrel he had just had with his wife; the doctor thereupon told West that he must get away from his family for a time in order to recover his spirits and composure. The doctor also recommended West to go to Baltimore to consult with a medical expert there. This expert testified as a witness in the case and said that, after hearing West's story, he sent him to a nursing home in Baltimore, which was a modified type of hospital for nervous convalescent patients, and afterwards to a rest cure at Buena Vista, a place in the Blue Ridge Mountains where he could take exercise playing golf and visit with his sister. The doctor testified that he found

West suffering from a nervous disorder making him irritable and excitable; that his examination divulged that West had a number of pains, some abdominal and some in his chest, pains which West said radiated from his chest to his shoulder; that the witness had West examined by a heart specialist, and, after a thorough examination, the specialist as well as the witness was convinced that West's complaints were of a very minor order, and that the story of his pain in the chest was of such minor note that it was thought unwise to restrict West's activities in any way; and that the witness and the heart specialist dismissed the question of possible heart disease and told West that he did not have anything wrong with his heart, but to behave like any man of 54 years ought to behave, and not to run up and down stairs or run after street cars as he used to do. Afterwards, when West died suddenly, the doctor stated he suspected that he had made a mistake in his diagnosis, and that West was suffering from the beginning of angina pectoris at the time of the examination, but that West was persuaded at that time that his heart was sound. In the course of these investigations West was sent to an eye specialist to ascertain if there was any hardening of the arteries back of the eye, but the eye specialist reported that West did not have any such hardening of the arteries.

The testimony also shows that the insured, when he applied for the policy, was examined by two medical examiners of the company, who found him to be in good condition and unqualifiedly recommended his acceptance as a risk for a policy.

Subsequent to the examination of West and the issuance of the policy he went on a trip to Europe, where he remained for some weeks, but the evidence tends to show that he regarded the trip as one for pleasure and rest only, and not because of illness. This trip had been planned by him as a pleasure trip for a long time.

We are of the opinion that the record contains substantial evidence tending to show that West, at the time when he answered the questions above set out, did not believe that he had been afflicted with any of the diseases named in the questions, and believed that he was then in good health. Therefore it was not error for the court to deny the company's motion for a directed verdict, and submit the case to the jury.

■ The company assigns as error the refusal of the court to strike out the testimony of the witness, Jackson, who testified as to circumstances leading up to the sale of the policy to West. The witness disclosed that he was the agent who secured the insurance and that he had difficulty in getting West to take any insurance. We think this testimony was not incompetent, in view of the fact that the issue was one of fraud, and that all of the circumstances surrounding the transaction in question might properly be placed before the jury.

■ It is also assigned as error that the court ordered a verdict for the plaintiff against this defendant in the case of Northwestern Mutual Life Insurance Company v. Gott, supra, which was tried conjointly with the present case, and that this was done in the presence of the jury. We think this was not error. The cases were consolidated for trial without objection of either party, and neither party, therefore, has a right to complain of such proceedings as would naturally follow this consolidation.

The appellant assigns as error the court's refusal to grant its prayers 2, 3, 4, 5, and 7, as requested, and in modifying appellant's prayer No. 6, before delivering it to the jury. We think that these prayers were properly refused, inasmuch as they ignored the element of knowledge or belief by West when answering the questions concerning his physical condition. In effect, they eliminated the question of good faith and honest conviction by West concerning his condition entirely from the situation. Moreover, we think that the charge of the court fully covered the case and correctly instructed the jury concerning the issues involved therein.

From a review of the entire record we think that the judgment of the lower court should be, and it hereby is, affirmed, with costs.

HITZ, Associate Justice, dissents.